# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DONNA CLAUSSEN ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 CV 05316 |
| v. ) | |
| ) | |
| THOMAS MUCHOWSKI, an individual; ) | |
| and FARMERS GROUP, INC., a foreign ) | Judge John Robert Blakey |
| corporation. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Donna Claussen ("Plaintiff") worked as an Office Manager for Thomas Muchowski, an insurance agent for Defendant Farmers Group, Inc. ("Farmers"). In this suit, she alleges that Muchowski repeatedly sexually harassed her and unlawfully discriminated against her on account of her gender. She sues Muchowski for violation of Illinois' Gender Violence Act (Count I) and Human Rights Act ("IHRA") (Count II), assault (Count IV), battery (Count V), intentional infliction of emotional distress (Count VI), and violation of Title VII of the Civil Rights Act of 1964 (Count VII). [1]. She also sues Farmers for violations of the IHRA (Count III) and Title VII (Count VII). *Id.* Farmers moves to dismiss the claims against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [18]. For the reasons set out below, the Court grants Farmers' motion [18].

I.  Background[1]

In January 2020, Plaintiff began to work as an Office Manager in the office of Thomas Muchowski, an insurance agent for Farmers. [1] ¶¶ 5, 9. Around March 15, 2020, Muchowski came up behind her at her desk, grabbed her breasts, and made vulgar comments. *Id.* ¶ 12. She screamed and ran from him. *Id.* ¶ 13. This was the first incident in what she alleges became a pervasive pattern of sexual harassment. Muchowski would make inappropriate comments to Plaintiff regarding female customers and tell her intimate details of his and his customers' sex lives, despite Plaintiff telling him to stop. *Id.* ¶¶ 14–15. Muchowski also became "angry and hostile towards her most days," and would take out his frustrations on her with verbal outbursts, calling her "stupid" and asking why he had hired her. *Id.* ¶¶ 16–18.

On May 21, 2020, she spoke on the phone with Muchowski's former office manager, Brooke Crutchfield. *Id.* ¶¶ 19–22. Crutchfield told Plaintiff that Muchowski had also harassed her by licking her ear, kissing her head, playing with her hair, and commenting about her body. *Id*. A few days after she spoke to Crutchfield, Muchowski grabbed Plaintiff's breasts again, which she resisted by grabbing and bending his fingers. *Id.* ¶¶ 23–24. He laughed and walked away. *Id.* ¶ 25.

Around June 30, 2020, Plaintiff complained about Muchowski to Farmers' District Manager, Nate Hildner, who said he would relay her concerns to Farmers'

---

[1] For purposes of this motion, the Court accepts as true all well-pled factual allegations in the Complaint, [1]. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

"leadership." *Id.* at ¶¶ 26–27. According to Plaintiff, Hildner told Plaintiff "that he knew 'how Tom talks to people.'" *Id.* ¶ 27.

Because of Muchowski's conduct, Plaintiff felt unsafe at work and quit on July 6, 2020. *Id.* ¶ 28. She filed a charge with the EEOC the next day, and another one on August 20, 2020. *Id.* ¶ 30. Two days after she quit, one of Farmers' attorneys contacted her for a statement as part of Farmers' own investigation. *Id.* ¶ 29. At some point, Plaintiff learned that Muchowski resigned on November 30, 2020; according to her, Farmers allowed "him to quietly close out his business without any further remedial actions." *Id.* ¶ 31.

Farmers now moves to dismiss the Title VII and IHRA claims against it, arguing that Plaintiff has not (and cannot) plausibly allege that Farmers employed her. [19]. It also argues that, even if Plaintiff could establish an employment relationship sufficient to satisfy Title VII and IHRA requirements, Plaintiff's complaint fails to allege facts to hold Farmers accountable for Muchowski's alleged harassment. *Id.* at 10–11.

## II.  Legal Standard

Farmers moves to dismiss the claims against it pursuant to both Rules 12(b)(1) and 12(b)(6). In resolving a Rule 12(b)(6) motion, the Court may only consider "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). It must accept as true all well-pled facts and draw all reasonable inferences in the plaintiff's favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d

3

911, 915 (7th Cir. 2013); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The Court, however, need not accept as true legal conclusions. *Yeftich*, 722 F.3d at 915. To survive a 12(b)(6) motion, the Complaint must "state a claim to relief that is plausible on its face," which means it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Rule 12(b)(1) motions, in turn, challenge a court's jurisdiction to hear a case or controversy. For such motions, a defendant may assert both a facial and factual challenge to jurisdiction—that is, that the complaint fails to sufficiently allege a basis for jurisdiction or that "there is *in fact* no subject matter jurisdiction, even if the pleadings are formally sufficient," *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 445 (7th Cir. 2009) (emphasis in original). The Court analyzes facial challenges using the same standard applicable to Rule 12(b)(6) motions. *Id.* For factual challenges however, a court may consider evidence outside of the pleadings and the plaintiff "bears the burden of coming forward with competent proof that standing exists." *Apex*, 572 F.3d at 445 (citing *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir.2003); *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir.1996)).

III.  Analysis

    A.  Title VII's Employer Requirement

As Farmers correctly notes, a threshold element of a Title VII claim is "the existence of an employer-employee relationship." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). While an employee may bring a Title VII claim against a "direct" employer, it may also sue an "indirect" employer in limited instances, such

4

as if the "indirect" employer qualifies as a "joint employer." *Id.* (citing *Tamayo v. Blagojevich*, 526 F.3d, 1074, 1088 (7th Cir. 2008) and *EEOC v. Ill.*, 69 F.3d 167, 169 (7th Cir. 1995)).

Farmer challenges whether Plaintiff has (or can) allege that Farmers qualifies as either her direct or indirect employer. [19]. According to Farmers, Title VII's employer requirement implicates Article III standing. [19] at 12–13. Thus, in addition to attacking the sufficiency of Plaintiff's complaint on this requirement, it also relies upon its Appointment Agreement with Muchowski, which Farmers attaches to its Motion. [19-1] (Ex. A). According to Farmers, the Appointment Agreement affirmatively establishes that Farmers did not employ Muchowski or Plaintiff; rather Muchowski was an independent contractor who employed Plaintiff. [19] at 12–13.

In opposition, Plaintiff concedes that Muchowski employed her, but argues that, "at a minimum," her Complaint alleges facts to infer that Farmers and Muchowski jointly employed Plaintiff. [24] at 3–4 ("Muchowski was certainly Claussen's employer. The only question then is whether Farmers was, as well."). In support, she points to her allegations about Farmers' investigation of her harassment complaints against Farmers. She also points to provisions in the Appointment Agreement, *id.* at 5–7, and offers an Affidavit with new factual allegations, *id.* at 25–26 (Ex. A).

5

### 1. The Employer Requirement Does Not Implicate Article III Standing.

As discussed above, on a Rule 12(b)(6) motion, a Court cannot consider extrinsic evidence. Yet both parties rely heavily upon extrinsic evidence here. Farmers insists the Court can consider this evidence with respect to Title VII's employer requirement because, according to Farmers, this requirement implicates Article III standing. [19] at 12. Plaintiff presumably assumes it does, too, since she submits extrinsic evidence to try to establish the employer requirement.

The Court disagrees. The Seventh Circuit has not directly addressed whether the Title VII employer requirement implicates subject-matter jurisdiction, but the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) proves dispositive. *Arbaugh* centered on Title VII's "employer" definition and its limitation to employers with at least 15 employees. *Id.* (analyzing 42 USC § 2000e's "employer" definition). The Court held that this limitation did not implicate Article III standing because it appeared under Title VII's definition provision, § 2000e, which "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* at 515 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). It emphasized that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516.

Although *Arbaugh* addressed Title VII's numerosity threshold and not the broader employer definition at issue here, both prerequisites arise from Title VII's definitional provision, § 2000e, which "does not speak in jurisdictional terms or refer

6

in any way to the jurisdiction of the district court." *Id*. at 515. Thus, just as the numerosity threshold constitutes a non-jurisdictional requirement, the scope of employer requirement constitutes a non-jurisdictional question as well. At least one court in this district has held as much, *Levin v. Madigan*, 697 F. Supp. 2d 958, 963 (N.D. Ill. 2010), as has every circuit to consider the issue. *Id*. (citing *Harris v. Attorney Gen. of the U.S.,* 657 F.Supp.2d 1, 8 (D.C. Cir. 2009); *Xie v. Univ. of Utah,* 243 F. Appx. 367, 371 (10th Cir. 2007); *Townsend v. Shook,* 323 F. App'x 245, 250 (5th Cir. 2009)). Thus, the *Arbaugh* decision and its "readily administrable bright line" test, 546 U.S. at 516, establishes that Title VII's employer requirement is not a jurisdictional requirement, but simply an essential element of Plaintiff's claim.[2] As a result, the Court considers Farmers' motion under Rule 12(b)(6) and disregards evidence outside the Complaint.[3]

### 2. Plaintiff's Complaint Fails to Plausibly Allege that Farmers Employed Her.

As discussed above, Plaintiff agrees that Muchowski employed her, but she insists that she plausibly alleges that Farmers also employed her. [24]. For a defendant to qualify as a joint employer for purposes of a Title VII claim, a plaintiff

---

[2] As discussed later in this Opinion, the Seventh Circuit has issued multiple opinions since *Arbaugh* that discuss Title VII's employer requirement. Tellingly, it has never referred to the requirement as jurisdictional.

[3] Although the Court has the discretion to convert Farmers' motion to one for summary judgment, *see Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (holding that when a party relies on evidence outside of the complaint to support a Rule 12(b)(6) motion, "the court must either convert the 12(b)(6) motion into a motion for summary judgment" or "exclude the documents" and "continued under Rule 12."), it declines to do so here. Courts generally covert a motion only after providing "the adversely affected party with notice and opportunity to respond" with additional evidence. *Alito v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996).

must show that "the putative employer exercised sufficient control" over plaintiff and "the 'economic realities' are such that the putative employer can be held liable under Title VII." *Love*, 779 F.3d at 701–02. To facilitate this inquiry, the Seventh Circuit, in *Knight v. United Farm Bureau Mutual Insurance Co.* articulated five factors a court should consider: (1) the extent of the employer's control and supervision over the employee; (2) the kind of occupation and nature of skill required, including whether skills were acquired on the job; (3) the employer's responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment. 950 F.2d 377, 378–39 (7th Cir. 1991); *see also Love*, 779 F.3d at 702 (discussing the *Knight* factors).

The issue of whether an entity qualifies as a joint employer often cannot be resolved on a motion to dismiss because "it involves 'a fact-intensive inquiry that typically requires further development through discovery.'" *Nor v. Alrashid*, 20 C 7470, 2022 WL 815542, at \*6 (N.D. Ill. Mar. 17, 2022) (quoting *Petneris v. Citgo Petroleum Corp.*, 104 F. Supp. 3d 894, 900 (N.D. Ill. 2015)). At the pleading stage, a plaintiff need only allege sufficient facts to support a theory that the defendant exercised enough control over her to qualify as a joint employer. *Nor*, 2022 WL 815542, at \*6.

Here, however, Plaintiff's Complaint alleges no facts to shed light on *Knight*'s five factors or suggest how Farmers exercised any control over her, let alone "significant" control. For example, she does not allege that Farmers hired her or could fire her, paid her, gave her bonuses, dictated her assignments, or controlled her work

8

performance or evaluations. Instead, her Complaint simply alleges in conclusory fashion that Muchowski and Farmers both employed her. [1] ¶¶ 3–4, 35. This does not suffice.

In response to Farmers' motion, Plaintiff points to her allegations that she contacted Farmers to complain about Muchowski's harassment and a Farmers attorney contacted her in response. [24] at 7. According to her, this "shows Farmers had some level of interest and control over" her "work environment." *Id.* While these allegations may suggest control over administrative issues related to Muchowski's insurance agency, without more, these allegations do not suffice to infer substantial control over either her or Muchowski. *See, e.g., Shah v. Littelfuse Inc.*, No. 12-cv-6845, 2013 WL 1828926 (N.D. Ill. Apr. 29, 2013) (granting motion to dismiss for failure to allege a joint employer relationship where complaint, at most, suggested the defendant "maintained some administrative involvement in" the plaintiff's employment). Further, even viewing these allegations in the light most favorable to Plaintiff, they suggest at most that Farmers had some control over *Muchowski*, but do not establish that Farmers had substantial control over her.

In the absence of support in her Complaint, Plaintiff submits an affidavit in which she states that Farmers required her to attend a training seminar. [24] at 25 (Ex. A ¶ 3). She insists that this fact may establish that Farmers controlled how she performed her job. *Id.* at 7. She also points to provisions in Muchowski's Appointment Agreement that suggest, to her, that Farmers controlled Muchowski (and, by association, her). *Id.* at 5–7. As discussed above, however, the Court cannot

9

consider extrinsic materials in deciding a Rule 12(b)(6) motion and Plaintiff's complaint alleges nothing about a training seminar or the Appointment Agreement. She may not amend her Complaint through her response. *See Agnew v. Nat'l Collegiate Athletics Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (holding that a complaint "may not be amended by briefs in opposition to a motion to dismiss.").

Overall, her Complaint fails to allege facts for the Court to plausibly infer that Farmers jointly employed her. Accordingly, the Court grants Farmers motion to dismiss Plaintiff's Title VII claim (Count VII) against it. The Court grants the motion without prejudice, however, to give Plaintiff the opportunity to amend her complaint in the event she believes, in good faith and consistent with her Rule 11 obligations, that she can allege facts to state a facially plausible Title VII claim against Farmers. In this regard, the Court observes that adding an allegation about the Farmers training session, without more, will not save her claim. *See, e.g., Knight*, 950 F.2d at 377 (affirming District Court's finding that training, alone, does not establish "control").[4] In addition, much of her extrinsic evidence focuses upon whether Farmers was *Muchowski's* employer, but the relevant inquiry for Plaintiff's Title VII claim is

---

[4] Although the parties acknowledge the *Knight* five test, neither relies on the facts of that case, even though it involved an examination of whether an insurance company qualified as an employer of its insurance agent for purposes of a Title VII sex discrimination claim. After a bench trial, the district court found that it did not, and the Seventh Circuit affirmed. Though not dispositive of the issues here (indeed, *Knight* makes clear that the issue—even in the insurance context—requires a case- and fact-specific inquiry, which may explain why Farmers' motion did not emphasize it on the facts), the case is certainly on point, as it involved the same industry and discussed at least some industry-standard arrangements. Thus, Plaintiff should closely examine *Knight*'s reasoning on the facts to determine whether she can amend her claim. And, similarly, if Plaintiff does amend, Farmers should closely examine *Knight* to determine whether arguments about its employer status require development through discovery before they can be resolved.

10

whether Farmers qualifies as *her* employer. Plaintiff should consider this distinction when deciding whether and how to amend her Complaint.

Finally, in granting dismissal of Plaintiff's Title VII claim without prejudice, this Court also rejects Farmers' alternative argument that, even if Plaintiff could establish that it qualifies as a "joint employer", Plaintiff fails to allege facts to hold Farmers accountable. [19] at 10–11 (citing *Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 810 (7th Cir. 2014)). Farmers correctly notes that a joint employer may only be held liable for another employer's discrimination if it knew or reasonably should have known of the discrimination and failed to take reasonable corrective action within its control. [19] at 10–11; [25] at 4–5. But Plaintiff alleges that she informed a Farmers district manager, Nate Hildner, of Muchowski's harassment and that Hildner told her in response that he already knew "how Tom [MUCHOWSKI] talks to people." [1] ¶ 27. She alleges that Muchowski also sexually harassed the woman who previously held her position. *Id.* ¶ 21. Considering these allegations together, and drawing all reasonable inferences in Plaintiff's favor, one could plausibly infer that Farmers already knew that Muchowski sexually harassed his employees before Plaintiff complained. Depending on what it knew and when it knew it, this may establish Farmers "knew or should have known" about the alleged

11

harassment and failed to take timely and reasonable action. At this stage, these allegations suffice.[5]

### B. Plaintiff's IHRA Claim

Farmers also moves to dismiss Plaintiff's IHRA claim against it for similar reasons. Until recently, the IHRA only allowed discrimination claims against employers for harassment of its employees. *See Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 929–30 (7th Cir. 2014). The Illinois legislature recently amended the IHRA, however, such that, effective January 2020, employers also may face liability for harassment of "nonemployees" by its employees where "nonemployee" is defined as a person who "is directly performing services for the employer pursuant to a contract with that employer." *See* 775 ILCS 5/2-102 (A-10). Plaintiff, who began working for Muchowski in January 2020, [1] ¶ 9, asserts an IHRA claim against Farmers under both theories, in the alternative, *id.* ¶ 44 ("Upon information and belief, CLAUSSEN was an employee of FARMERS; however, *alternatively*, she was a 'nonemployee' of FARMERS under the IHRA because she was a person who was not otherwise an employee of FARMERS yet was directly performing services for

---

[5] If Plaintiff had just alleged that she complained to Hildner about the harassment and then quit six days later, her allegations may not suffice. *See, e.g., Zimmerman v. Cook Cnty. Sheriff's Dept.*, 96 F.3d 1017, (7th Cir. 1996) (finding that, even if an employer had not taken remedial action within seven days of receiving a discrimination complaint, such a short period does not suggest negligence); *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004) (noting that the employee quit before her employer could investigate her discrimination complaint and finding that "an employee has not acted reasonably if she assumes the employer will fail to protect her without allowing the employer a chance to try."). But Plaintiff's allegations about the prior harassment and Hildners' comment that he already knew about Muchowski's behavior save her claim, as they plausibly suggest that Farmers knew about the harassment for a much longer period of time, and still did nothing.

12

FAMRERS pursuant to a contract."). Farmers argues that Plaintiff fails to allege an IHRA claim under either theory. [19] at 11–12.

To the extent Plaintiff's IHRA claim rests on a theory that Farmers employed her, Plaintiff fails to plausibly allege her claim for the same reasons she fails to allege a Title VII claim. As Farmers correctly notes, to determine if an employment relationship exists under the IHRA, Illinois courts apply a nearly identical test to the federal test that applies to Title VII claims. [19] at 11 (citing *Mitchell v. Dep't of Corr.*, 856 N.E.2d 593, 597–98 (Ill. App. Ct. 2006)). *Mitchell* instructs that a court should consider factors such as "the amount of control and supervision, the right of discharge, the method of payment, the skill required in the work to be done, the source of tools, material or equipment, and the work schedule." 856 N.E.2d at 598. Notably, it also states that "control of the manner in which work is done is considered the most important" factor and a court "may look to the standards applicable to analogous federal claims." *Id.*

Plaintiff agrees that Illinois' test is "fairly similar" to the federal test, but she argues that, even if she fails to allege facts to meet the federal test, she still qualifies as an "employee" under the IHRA pursuant to "the IRS 20-Factor Test." [24] at 9–10. Plaintiff cites no authority (from Illinois or elsewhere) to support her suggestion that this Court apply a test that the Internal Revenue Service uses for tax purposes. This Court must look to Illinois law for the test to apply to the IHRA claims and *Mitchell* made explicit that it considers the same factors "applicable to analogous

13

federal claims." 856 N.E.2d at 598. As discussed above, Plaintiff's complaint does not allege facts to establish an employer relationship.

Plaintiff's alternative theory—that Farmers may be liable for Muchowski's harassment of her as a "non-employee"—also fails as alleged. In her IHRA count against Farmers, she alleges, for the first and only time that, on "information and belief. . . she was a 'nonemployee' of FARMERS under the IHRA because she was a person who was not otherwise an employee of FARMERS yet was directly performing services for FARMERS pursuant to a contract." [1] ¶ 44. Nowhere else in her Complaint does she reference a contract between her and Farmers, let alone explain the nature or terms of such a contract.[6] Rather, as discussed above, her Complaint provides no allegations regarding the nature of her relationship with Farmers other than that she worked for Muchowski who, in turn, sells insurance for Farmers. Notably, in responding to Farmers' motion to dismiss, she does not address her alternate "nonemployee" theory; instead, she merely asserts that her allegations (supplemented by those in her affidavit and Muchowski's Appointment Agreement) demonstrate that she qualifies as Farmers' employee. She cannot both qualify as Farmers' employee and qualify as a nonemployee. Her failure to address this alternate theory indicates that she has abandoned it. For these reasons, the Court

---

[6] Plaintiff's use of the phrase "on information and belief" also raises some questions. When a plaintiff makes a factual allegation on information and belief, he represents "that he has a good-faith reason for believing what he is saying, but acknowledging that these allegations are based on secondhand information that he believes to be true." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011). Plaintiff cannot plausibly plead on information and belief that she had a contract with Farmers, as such information plainly falls within her own personal knowledge.

14

finds that Plaintiff has not alleged facts to plausibly support an IHRA claim against Farmers as a "nonemployee."[7]

### C. Plaintiff's Claims Against Muchowski

Having dismissed the claims against Farmers, the Court pauses to consider its jurisdiction over the remaining claims, which are all against Muchowski, a non-diverse defendant. The only federal claim against Muchowski is a Title VII discrimination claim in his individual capacity. Although Muchowski has not yet responded to the Complaint, a plaintiff cannot bring Title VII clams against an individual. *See Williams v. Banning*, 72 F.3d 552 (7th Cir. 1995). Accordingly, the Court dismisses Count VII with prejudice as to Muchowski.

---

[7] As Farmers also points out, even if Plaintiff qualifies as a "nonemployee" under the IHRA, she still cannot hold Farmers liable pursuant to the IHRA for Muchowski's harassment unless she establishes that Farmers employed Muchowski. [19] at 12. Farmers argues that Muchowski's Appointment Agreement establishes that Muchowski was an independent contractor not an employee. *Id.* Farmers also cites to multiple cases involving insurance agents that found on summary judgment that the agent was an independent contractor. *Id.* at 7–8. The cases Farmers cites confirm that this is often a fact-specific inquiry that cannot be resolved without discovery.

15

**IV. Conclusion**

For the reasons explained above, the Court grants Farmers' motion to dismiss [18] and dismisses Counts III and VII as to Farmers without prejudice. It further dismisses Count VII as to Muchowski with prejudice. To the extent Plaintiff can, consistent with her obligations under Rule 11, amend her complaint to allege a plausible Title VII or IHRA claim against Farmers, she may file an amended complaint by October 24, 2022.

Dated: September 26, 2022                                    Entered:

_____
John Robert Blakey
United States District Judge